Archie Doyle MARTIN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–05–01184–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 20, 2007.

Jerald K. Graber, Houston, for appellant.

Shirley Cornelius, Asst. Dist. Attorney–Harris County, Houston, for state.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Archie Doyle Martin, Jr., was charged by indictment with the felony offense of driving while intoxicated ("DWI"), having been twice previously convicted of DWI.[1] Appellant pleaded not guilty. A jury found him guilty as charged and the trial court assessed punishment at two years' confinement.

In one issue, appellant contends that he was denied his Sixth Amendment right to effective counsel based on his trial counsel's failure to investigate, failure "to object or limine prior convictions" of appellant, and "bizarre and unprofessional actions" during trial.

We affirm.

## Background

During the evening rush hour on November 8, 2004, Danielle Guessman was traveling along a two-lane road outside of Crosby, Texas, when she noticed appellant driving erratically in front of her. Guessman's passenger, Toni Alford, called 911 and reported that appellant was swerving and had nearly collided with oncoming traffic several times. Guessman and Alford saw appellant hit a concrete barricade and then saw him hit a Ford Explorer at

---

1. *See* Tex. Pen.Code Ann. § 49.04 (Vernon 2003). An offense under section 49.04 is a felony if it is shown on the trial of the offense that the person has two previous convictions for DWI. *Id.* § 49.09(b)(2) (Vernon Supp. 2006).

an intersection, where appellant finally came to a stop.

Guessman, who had stopped to check on the driver of the Explorer, testified that appellant got out of his vehicle and staggered as he walked to the Explorer. Alford testified that appellant was dressed in work clothes, that he smelled of sweat and alcohol, and that he had urinated on himself. In addition, Alford testified that appellant seemed disoriented, could not hold his head up, and hung onto his vehicle for balance.

Another driver at the intersection, Tiffany Hargrove, testified that she was stopped at the light behind the Explorer, that she saw appellant coming, and that she swerved to get out of the way just before appellant hit the Explorer. Hargrove said that, when she got out of her car, she heard the driver of the Explorer say to appellant, "You're drunk." Hargrove testified that appellant responded, "I am not drunk," and that the driver insisted, "Yes, you are drunk." Hargrove also observed that appellant seemed to have trouble keeping his balance.

Harris County Deputy Sheriff Travis Kirkley arrived at the scene moments after the accident occurred. Deputy Kirkley testified that appellant seemed disoriented, was slurring his speech, was hanging onto his vehicle for stability, had urinated on himself, and had a strong odor of alcohol on his breath and person. Deputy Kirkley testified that appellant admitted he had taken "three sips of a beer." Deputy Kirkley learned that appellant's license had been suspended and saw an open container of beer on the driver's side of the bench seat in appellant's truck. Deputy Kirkley testified that, based upon his observations and upon the witnesses' statements, he formed the opinion that appellant was intoxicated. Deputy Kirkley arrested ap-

pellant and found an un-labeled pill bottle containing white pills in appellant's pocket, later determined to be muscle relaxers. Deputy Kirkley did not perform field sobriety tests at the scene because of the backup of traffic caused by the accident.

Deputy Kirkley transported appellant 10–15 miles to the police station, where, normally, field sobriety tests would have been administered in front of a video camera. However, in this case, Deputy Kirkley testified that he was not sure if field sobriety tests had been performed and that any video created could not be found.

Appellant disputes that he was intoxicated. Appellant testified that he had just left work and was driving to Crosby. Appellant admitted that he stopped and purchased a beer at a convenience store, that he opened it, and that he took "a couple of big swallows" before he set it beside him in his lunch cooler on the seat. Appellant testified that he was driving along until the Explorer made a sudden move at the intersection and he could not avoid the collision.

Appellant further testified that his truck sways because it is a 1983 model with major problems in the steering box and tie rods. Appellant, who is a pipe fitter, said that he was very sweaty and dirty, but that at no time did he urinate upon himself. Appellant explained that he has had multiple back surgeries and that the bottle of pills was an old prescription of his that he had found in his tool box that day and he was taking the medication home to get it off of the job site. Appellant testified that there were no field sobriety tests administered, but that he submitted two samples for breath testing. Appellant claimed that his results were "0.00" both times. There are no breath test results in evidence.

On November 10, 2004, Natasha Sinclair was appointed as counsel for appellant. At appellant's request, Sinclair moved for blood testing to establish that appellant was not under the influence of a controlled substance, which the trial court granted. Sinclair also moved for the appointment and payment of an investigator to assist with the preparation of appellant's defense, which the trial court granted. The results of any testing or investigation, however, are not in the record. On December 16, 2004, Sinclair withdrew as counsel and the trial court substituted Walter Boyd, whose representation is the subject of this appeal.

Trial in the matter was held on July 18, 2005. The State presented evidence that appellant previously had been convicted of DWI, in years 2000 and 2001. The trial court instructed the jury that it could find appellant guilty of having operated a motor vehicle in a public place while intoxicated by alcohol, by an unknown drug, or by a combination of both. The jury returned a general verdict of guilty. On September 19, 2005, Boyd withdrew as appellant's counsel. On December 15, 2005, the trial court assessed punishment at 2 years' confinement, signed the judgment, and appointed appellate counsel. There was not a motion for new trial. This appeal followed.

## Ineffective Assistance of Counsel

In one issue, appellant contends that he was denied his Sixth Amendment right to effective counsel because his trial counsel, Walter Boyd, (1) failed to investigate and failed to conduct discovery with regard to the results of his breath tests; (2) failed "to object or limine prior convictions" of appellant; and (3) engaged in "bizarre and unprofessional" conduct at trial.

Appellant was entitled to reasonably effective assistance of counsel. *See* U.S.

CONST. amend. VI; TEX. CONST. art. I, § 10. The right to counsel, however, does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App.2006). To prove ineffective assistance of counsel, appellant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005). "Reasonable probability" means a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

To prevail, appellant must prove ineffective assistance by a preponderance of the evidence and must overcome the strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance or might reasonably be considered sound trial strategy. *Robertson*, 187 S.W.3d at 482–83; *Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003).

As the reviewing court, we consider the totality of the representation. *Robertson*, 187 S.W.3d at 483. Isolated instances of errors of commission or omission will not render counsel's performance ineffective. *Id.* We consider the adequacy of assistance as viewed at the time of trial, not through hindsight. *Id.*

Allegations of ineffectiveness must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 833 & n. 13 (Tex. Crim.App.2002). Generally, the record on appeal is undeveloped, and a silent record

that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Rylander*, 101 S.W.3d at 110–11. In those rare cases in which the record is sufficient to prove that counsel's performance was deficient, we will address the claim. *Bone*, 77 S.W.3d at 833 & n. 7.

1. *Failure to Investigate or Conduct Pre–Trial Discovery*

In his first sub-issue, appellant contends that Boyd failed to investigate and failed to conduct discovery with regard to the results of his breath tests. Appellant contends that his breath tests would have "conclusively" shown that he was not intoxicated.

■■■ An attorney representing a criminal defendant has a duty to make reasonable investigations. *Wiggins v. Smith*, 539 U.S. 510, 521–22, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *McFarland v. State*, 928 S.W.2d 482, 501 (Tex.Crim.App.1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex.Crim.App. 1998). A "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 521–22, 123 S.Ct. at 2535. "We will not reverse a conviction unless the consequence of the failure to investigate is that the only viable defense available to the accused is not advanced ... [and] there is a reasonable probability that, but for counsel's [failure to advance the defense], the result of the proceeding would have been different." *McFarland*, 928 S.W.2d at 501; *see also Johnson v. State*, 172 S.W.3d 6, 12 (Tex.App.-Austin 2005, pet. ref'd) (considering impact of failure to discover audiotape incriminating appellant).

■■■ Here, appellant's defense at trial was that he was not intoxicated. Appel-

lant contends that he gave two samples for breath testing, that he saw the test results, and that his blood-alcohol level was ".000 [sic] percent." Appellant contends that Boyd failed to make any attempt to obtain the breath-test results, as indicated by the lack of pre-trial motions in the record. Appellant contends that, had Boyd conducted "proper investigation and pre-trial discovery, [Boyd] would have discovered scientific testing results that were conclusive and exculpatory on the issue of intoxication." Appellant contends that, without the test results, the only evidence appellant was able to present in his defense was his own testimony that he was not intoxicated.

The record before us does not contain any pre-trial motions with regard to breath test results. An order for blood testing appears, but there are no results in the record. The record shows that an investigator was appointed to assist appellant's previous counsel in the preparation of appellant's defense; however, any findings of such an investigation do not appear in the record. The only evidence at trial that breath testing was conducted was appellant's testimony that he was tested and that he saw the results attached to the State's file at the probable cause hearing. At trial, Boyd asked the State if it had a copy of the results. The State replied that it did not and stated that appellant's testimony concerning the breath tests was false.

The record does not reflect whether Boyd sought the breath test results or, if not, the reasons that Boyd did not seek the results through pre-trial motions. As the State contends, Boyd may have adopted a strategy to allow the jury to believe that the State had "conveniently lost" exculpatory evidence. We cannot speculate as to what evidence may have been available and, if available, whether Boyd found it to

be as favorable as appellant recalled. *Bone,* 77 S.W.3d at 834–35 & n. 21. Appellant did not file a motion for new trial and no hearing was held on the ineffectiveness claim, during which the matter could have been developed in the record. As a result, appellant has not overcome the presumption that counsel could have acted pursuant to sound trial strategy. *See Jackson v. State,* 973 S.W.2d 954, 955 (Tex.Crim.App. 1998); *Gibbs v. State,* 7 S.W.3d 175, 179 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd).

■ Moreover, as the State contends, the jury was charged that it could find appellant guilty on any one of three theories of intoxication; namely, by reason of alcohol, an unknown drug, or a combination of both. The jury returned a general verdict which could have been based solely upon the introduction of an unknown drug. Although breath test results reflecting a 0.00 percent blood-alcohol level would have supported appellant's defense to the theory of intoxication by alcohol, the breath test results would not have provided a defense to the theory of intoxication by an unknown drug. Hence, appellant has not shown that, had the breath test results been made available and admitted into evidence, there is a reasonable probability that the result of the proceeding would have been different.

Accordingly, appellant's first sub-issue is overruled.

### 2. *Appellant's Prior Convictions*

Appellant next contends that he was denied effective assistance of counsel because his trial counsel permitted the jury to hear evidence of appellant's prior convictions that were inadmissible under *Theus v. State,* 845 S.W.2d 874 (Tex.Crim.App. 1992). Specifically, contends appellant, counsel failed to request notice from the State regarding its intent to use his prior convictions, failed to file a motion in limine regarding the admissibility of his prior convictions, elicited testimony from appellant at trial concerning his prior convictions, and failed to object to the State's cross-examination of appellant regarding his prior convictions.

■ The mere failure to file pretrial motions does not categorically constitute ineffective assistance. *Autry v. State,* 27 S.W.3d 177, 182 (Tex.App.-San Antonio 2000, pet. ref'd). Here, appellant has not stated what he would have done differently had his counsel requested and had he received notice of the State's intent to use his prior convictions. *See id.* In addition, because there was no motion for new trial or hearing on the ineffective assistance claim, the record does not reflect counsel's motivations behind his decision not to file a motion in limine. However, any failure to file a motion in limine became moot once appellant introduced his prior convictions through his own testimony.

Appellant elected to testify during the guilt phase of the trial. The record shows that, at the beginning of direct examination, appellant's counsel elicited the following testimony:

[Counsel]: All right. I think we've heard a little bit about you already. Let's get this behind us. Now, what's your dog-gone criminal record about? What is it? Tell the jury.

[Appellant]: It goes back some years to approximately 1981, I think. There is a theft by receiving case back when I was 19 years old. There was a couple of drug cases later on, a couple of DWIs that I plea-bargained to DWI [sic] to keep from spending a lot of money and sitting a lot of time in jail awaiting to go to trial like this. And, then this crime that I'm being accused for now.

[Counsel]: Well, are you guilty of driving while intoxicated on the case that we're on trial for today?

[Appellant]: No, I am not.

. . . .

[Counsel]: . . . regardless of whether you were guilty before of DWI, you're saying you're not guilty this time?

[Appellant]: This is correct. I am not guilty this time.

On cross-examination, the State elicited testimony from appellant concerning his prior convictions for theft in 1981 and 1982, for DWI in 1984, twice for felony possession of controlled substances in 1997, for felony delivery of a controlled substance in 1999, and for failure to identify himself to a police officer by giving a false name and birthdate in 2004. Appellant's counsel did not object.

Appellant contends that counsel was ineffective because he permitted the jury to hear evidence of prior convictions, which created a danger that the jury would convict appellant based on a perceived pattern of past conduct rather than on the facts of the instant offense. The State contends that appellant's counsel clearly made a tactical decision to have appellant acknowledge his faults before the jury to build credibility to support appellant's assertion of innocence in the instant offense.

This court has held that eliciting testimony from the accused as to his own prior convictions can be a matter of sound trial strategy, if the prior convictions are admissible. *Rodriguez v. State*, 129 S.W.3d 551, 558–59 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). However, if prior convictions are inadmissible, the Court of Criminal Appeals has held that there can be no reasonable trial strategy for bringing them

to light. *Robertson*, 187 S.W.3d at 485–86; *Rodriguez*, 129 S.W.3d at 559.

Rule of Evidence 609, which governs the admissibility of prior convictions, provides:

(a) General Rule: For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted . . . only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

(b) Time Limit: Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Tex.R. Evid. 609.

Applying rule 609(b) and considering only the dates of each conviction because appellant has not provided many of the attendant facts, it appears that only appellant's 1982 and 1983 thefts could be considered too remote to be admissible because all [2] of the other offenses occurred within the 10-year period prior to the instant offense. *See id.* Because appellant was convicted in 2004 of a crime of moral turpitude-lying to the police, the 2004 conviction can remove the taint of the remoteness of the thefts. *See Rodriguez*, 129 S.W.3d at 559 (explaining that appellate court may find that, although crime is remote under rule 609(b), later convictions for felonies or

---

**2.** We do not consider appellant's 1984 DWI for remoteness because, as a misdemeanor, it

was not admissible under rule 609. *See* Tex.R. Evid. 609(a).

misdemeanors involving moral turpitude can be "tacked onto" remote convictions, which removes taint of remoteness); *Lape v. State*, 893 S.W.2d 949, 958 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (stating that lying to police is crime of moral turpitude). Thus, the remoteness alone of the thefts would not have rendered them inadmissible. *See id.*

Applying rule 609(a), appellant's 1984 DWI, which was a misdemeanor, was not admissible. *See* TEX.R. EVID. 609(a). Because appellant's drug convictions are felonies, and his thefts and failure to properly identify himself to a police officer are crimes involving moral turpitude, these prior convictions are admissible *if* the probative value of admitting the evidence outweighs its prejudicial effects. *See* TEX.R. EVID. 609(a); *Rodriguez*, 129 S.W.3d at 559 (stating that theft is crime of moral turpitude); *Lape*, 893 S.W.2d at 958 (stating that lying to police is crime of moral turpitude).

The Court of Criminal Appeals has set out a test for determining whether the probative value of a conviction outweighs its prejudicial effect under rule 609. *Theus*, 845 S.W.2d at 880. Under *Theus*, we consider (1) the impeachment value of the prior offense; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Id.*

First, we consider the impeachment value of the prior offense. *Id.* at 881; *Rodriguez*, 129 S.W.3d at 559. Offenses involving moral turpitude carry a higher impeachment value. *Theus*, 845 S.W.2d at 881. Appellant's 1997 and 1999 drug convictions are not crimes of decep-

tion. *See Denman v. State*, 193 S.W.3d 129, 136 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd). However, appellant's thefts involve deception. *See Rodriguez*, 129 S.W.3d at 559. In addition, appellant's 2004 conviction for failure to identify himself to police involved deception because he gave a false name and birthdate. This first *Theus* factor weighs in favor of admissibility of the thefts and the failure to identify.

Second, temporal proximity favors admissibility if the past crimes are recent and the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. Appellant's drug convictions and failure to identify himself to police were recent, having occurred within the prior 10 years. As discussed above, the theft convictions are not recent, having occurred over 20 years prior to the instant offense. However, appellant has demonstrated "a propensity for, and a history of, running afoul of the law" because his record includes multiple prior convictions spanning over 20 years. *See Rodriguez*, 129 S.W.3d at 560. This factor weighs in favor of the admissibility of appellant's prior convictions. *See id.*

Third, we consider the similarity of the past convictions to the current crime. *See id.* If the past crime is similar to the charged crime, this factor will "militate against admission" for impeachment purposes because there is a greater danger that the jury will convict on a perception of a pattern of past conduct. *Theus*, 845 S.W.2d at 881. Here, appellant's 1997 and 1999 drug convictions relate to his current charge of intoxication by an unknown drug; thus, this factor weighs against admissibility. However, as to the two thefts and failure to identify, which are not similar to the charged offense, this factor weighs in favor of admissibility. *See id.; Rodriguez*, 129 S.W.3d at 559.

■ Finally, under the fourth and fifth factors, we consider the importance of appellant's testimony and of his credibility. *Theus*, 845 S.W.2d at 881. We consider the defendant's defense and the means at his disposal to prove that defense. *Id.* Here, having chosen to testify and as the only witness for the defense, appellant's credibility was important. The evidence that appellant claims would have empirically refuted the State's claims was either not available or was not introduced (breath tests, blood tests, video). Hence, appellant had a heightened need to establish his credibility, while the State had a need to impeach appellant's credibility. *See id.* Thus, the fourth and fifth factors favor admission to impeach appellant's credibility. *See id.*

■ We conclude that appellant's prior theft convictions, prior felony drug convictions, and his conviction for lying to the police were likely admissible. Because it also appears that appellant's candor before the jury concerning his prior convictions was a strategic attempt to appear open and honest, and to lessen the impact of any impeachment on the issue, we cannot conclude that his counsel provided ineffective assistance with regard to the introduction of these convictions. *See Rodriguez*, 129 S.W.3d at 558, 560.

■ Although appellant's 1984 misdemeanor conviction for DWI was not admissible under Rule 609, appellant has not shown that there is a reasonable probability that, but for his counsel having permitted the jury to hear inadmissible evidence of the 1984 DWI conviction, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ In a subpoint, appellant complains that his counsel failed to object to the State's cross-examination of appellant as to his prior convictions. However, once the door was opened to appellant's prior convictions by his counsel, the State was entitled to develop testimony to fully explain these convictions, even if such evidence might ordinarily have been inadmissible. *See King v. State*, 773 S.W.2d 302, 303 (Tex.Crim.App.1989); *Paita v. State*, 125 S.W.3d 708, 713 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). Counsel is not ineffective for failing to make objections that have no legal basis.

Accordingly, appellant's second sub-issue is overruled.

## "Bizarre" Conduct of Counsel at Trial

In his third sub-issue, appellant contends that he was denied effective assistance of counsel because his trial counsel "acted in a bizarre and unprofessional manner many times during trial." Specifically, appellant contends that "[t]he trial record is full of instances where trial counsel either acted in a non-adversarial manner, or acted in a bizarre, highly unusual way, all of which prejudiced Appellant." Appellant cites three specific instances, as follows:

■ First, appellant complains of the following exchange that took place outside the presence of the jury concerning appellant having fallen asleep during portions of his attorney's voir dire:

[Trial Court]: I'm foreseeing—I mean, if your client gets convicted and the case gets appealed, the record is replete with evidence of your client being asleep during jury selection and no effort was made to kind of remedy the prejudicial impact that may have on the jury. You know, I'm concerned about this case being set up for a reversal, for, you know, your client being asleep during jury selection and no effort was made to remedy it, and as a result of his counsel not

making any effort to make sure the jurors would not hold it against him, you know.

[Boyd]: Well, I am not worried about the reflection it may have on me.

[Trial Court]: Maybe ineffective assistance of counsel.

[Boyd]: I know when I'm effective and when I am not.

[Trial Court]: Well, unfortunately, you don't get to decide that, the Court of Appeals gets to decide that.

[Boyd]: Well, they can take a flying leap, if they want to. I just know I've already assessed the thing, it's gone through my brilliant mind as to how I want to handle this, and I would prefer that it just be left alone....

Appellant does not state any specific argument or cite any authority to support his contention that this example demonstrates ineffective assistance of counsel. We note that it has been held that a defendant's choice to sleep through portions of his trial does not render his counsel's assistance ineffective. *Carter v. State*, 99 S.W.3d 772, 772–73 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (holding that choosing to sleep waives right to be present); *see also Hawkins v. State*, 660 S.W.2d 65, 79 (Tex.Crim.App.1983) (concluding that commenting on fact that defendant slept during his trial amounts to little more than directing the jury's attention to that which jurors had already witnessed).

■■■ Second, appellant complains of the following exchange that took place during direct examination of appellant:

[Defense counsel]: Well, [appellant], your life is a dad-gum mess. Do you admit that?

[Appellant]: I admit I've made some mistakes, yes, sir.

[Defense counsel]: You're not only—like the prosecutor says—**and I'd have to agree**—you're a liar, you've covered up, you're a thief, you're a drug dealer, you're all of those things, and you've committed so many dad-gum crimes you cannot even remember them all. Is that right or not?

[Appellant]: No, that's not correct.

[Defense counsel]: Well, I'm probably exaggerating a bit.

[Appellant]: No, that's not correct.

[Defense counsel]: But you've got a lot of them. And now you say—and by the way, you know—I'm going to bring this up because I think I'm doing it with your permission. I advised you not to testify, didn't I?

[Appellant]: Yes, you did.

[Defense counsel]: Now, I told you your personality sucks, didn't I?

(Emphasis by appellant.) In addition, appellant complains that his counsel improperly characterized appellant as an arrogant, audacious, spoiled brat.

The United States Supreme Court has examined a similar case in which defense counsel mentioned a host of details concerning his client's character and in which defense counsel referred to the defendant as "a bad person, lousy drug addict, stinking thief, [and a] jail bird." *Yarborough v. Gentry*, 540 U.S. 1, 9, 124 S.Ct. 1, 6, 157 L.Ed.2d 1 (2003). In refusing to find counsel ineffective, the Court explained that "[t]his is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case." *Id.*

Here, as discussed above, appellant had already testified, both on direct and on cross-examination, to a host of prior con-

victions, including theft and selling drugs. In addition, appellant testified that he had been convicted of having lied to the police and that he had once lied to a trial court judge. Appellant has not demonstrated that his counsel, by acknowledging the shortcomings that appellant had already placed before the jury through his own testimony, was deficient in his performance. *See id.*

Moreover, as in *Yarborough*, the case turned on whether the jury believed the appellant's version of the events. Here, as in *Yarborough*, at issue are statements by the appellant's counsel enumerating his client's faults. In *Yarborough*, the Court explained that "[w]hile confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event." *Id.* In addition, in explaining that there is nothing wrong with a rhetorical device that personalizes the doubts that anyone might have, the Court commented that "[w]inning over an audience by empathy is a technique that dates back to Aristotle." *Id.* at 11, 124 S.Ct. 1. Like *Yarborough*, we cannot conclude that acknowledging and identifying with the negative impressions the jury was likely to harbor rendered counsel's performance deficient.

▉ Finally, appellant complains of his counsel's attempt to have included in the jury charge that "the defendant's bad personality from the stand cannot be used against him as any evidence of guilt," "[t]hat his lawyer's obnoxious personality cannot be used as any evidence of guilt," and that "[t]he prosecutor's wonderful personality cannot be used as any evidence of guilt." Not surprisingly, the trial court denied these requests. *See Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex.Crim. App.2005) ("Requesting a jury instruction

to which one is not legally entitled, merely for the sake of making the request, is not the benchmark for a competent attorney."). However, taken in the full context of counsel's apparent strategy to gain credibility with the jury, we cannot conclude that these statements constituted ineffective assistance of counsel.

▉ Assertions of ineffective assistance must be firmly founded in the record. *Bone*, 77 S.W.3d at 835; *Gamble*, 916 S.W.2d at 93. Here, the record does not contain counsel's reasons for his approach. Appellant did not file a motion for new trial, in which counsel's reasons could have been developed on the record. When the record is silent, we may not speculate about why counsel acted as he did. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994); *Gamble*, 916 S.W.2d at 93. We must presume counsel had a plausible reason for his actions. *Safari v. State*, 961 S.W.2d 437, 445 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Appellant has not overcome the strong presumption that counsel might have acted pursuant to sound strategy. *See Gibbs v. State*, 7 S.W.3d 175, 179 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). Appellant seems to contend that this is one of those "rare cases" in which a record silent as to counsel's reasoning nonetheless reveals counsel's deficiency. *See Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex.Crim. App.2000). We disagree. In this case, counsel's actions are not such that no reasonable trial strategy could explain them.

We conclude that appellant has not shown that defense counsel's representation fell below an objective standard of reasonableness. We hold that appellant did not receive ineffective assistance of counsel at trial as contended.

We overrule appellant's third sub-issue.

## Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

The record establishes that, throughout the trial below, Walter Boyd, trial counsel for appellant, Archie Doyle Martin, Jr., not only acted bizarre, but actually demonstrated in front of the jury patent contempt for his client. Boyd, in his scorn for his client, most notably through direct examination, effectively became a second prosecutor in the case. The majority erroneously concludes that Boyd merely "acknowledg[ed] the shortcomings" of appellant and was trying to "win over" his audience with "empathy," like Aristotle. In reaching its result, the majority misapplies the United States Supreme Court's opinion and holding in *Yarborough v. Gentry,* 540 U.S. 1, 9, 124 S.Ct. 1, 6, 157 L.Ed.2d 1 (2003). Accordingly, I respectfully dissent.

In part of his issue presented to this Court, appellant argues that Boyd's conduct violated the Sixth Amendment of the United States Constitution[1] because his "highly prejudicial manner" and "bizarre and unprofessional" actions in front of the jury effectively deprived him of counsel during the trial. He notes that an accused "cannot receive a fair trial through the adversarial process when his own trial attorney tells the jury that he agrees with the prosecutor that [a]ppellant is 'a liar, you've covered up, you're a thief, you're a drug dealer, you're all those things, and you've committed so many dad-gum crimes you cannot even remember them all.'"

To prevail on a claim of ineffective assistance of counsel, a defendant must prove, by a preponderance of the evidence, that (1) his counsel's representation fell below an objective standard of professional norms and that, (2) but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *McKinny v. State,* 76 S.W.3d 463, 470 (Tex.App.-Houston [1st Dist.] 2002, no pet.). "Reasonable probability" means a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. Our review of counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Bell v. State,* 90 S.W.3d 301, 307 (Tex.Crim.App. 2002); *McKinny,* 76 S.W.3d at 470. A *Strickland* claim must be "firmly founded in the record," and the "record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson,* 9 S.W.3d at 813; *McKinny,* 76 S.W.3d at 470. However, a single egregious error of omission or commission by counsel may constitute ineffective assistance, even in the absence of a record setting forth counsel's reasons for the challenged conduct. *McKinny,* 76 S.W.3d at 470–71.

Appellant asserts that the trial record "is full of instances" where Boyd's behavior prejudiced his case. Two specific instances of such conduct stand out as particularly egregious. First, Boyd's questioning of appellant on redirect examination during the guilt phase of trial was hostile and antagonistic to appellant's case as exemplified in the following exchange:

---

1. U.S. CONST. amend. VI.

[Boyd]: Well, Mr. Martin, your life is a dad-gum mess. Do you admit that?

[Appellant]: I admit I've made some mistakes, yes, sir.

[Boyd]: You're not only—like the prosecutor says—and I'd have to agree—you're a liar, you've covered up, you're a thief, you're a drug dealer, you're all of those things, and you've committed so many dad-gum crimes you cannot even remember them all. Is that right or not?

[Appellant]: No, that's not correct.

[Boyd]: Well, I'm probably exaggerating a bit.

[Appellant]: No, that's not correct.

[Boyd]: But you've got a lot of them. And now you say-and by the way, you know-I'm going to bring this up because I think I'm doing it with your permission. I advised you not to testify, didn't I?

[Appellant]: Yes, you did.

[Boyd]: Now, I told you your personality sucks, didn't I?

[Appellant]: Well, that's from each person's point of view, I guess. Some people think my personality sucks and some people don't.

[Boyd]: You're coming across as an arrogant, audacious, spoiled brat. That's where you're coming over with this jury, I can tell you. My personality is bad enough, but the two of us....

[Appellant]: Well, if I am coming off that way to the members of the jury, I do apologize because I am not that way normally.

[Boyd]: Now, you're saying you're a nice guy, but you've gotten awful mad at me, haven't you?

[Appellant]: Yes, I have.

. . . .

[Boyd]: The prosecutor asked you, am I employed? Why am I even on this case? That's what I want to know.

[Appellant]: This is true. Because I did ask for you not to even show up.

Second, when the trial court expressed its concern about Boyd's advocacy for his client and admonished Boyd during voir dire about the possibility that his advocacy could be considered ineffective, Boyd acted defiant:

[Trial Court]: I'm foreseeing—I mean, if your client gets convicted and the case gets appealed, the record is replete with evidence of your client being asleep during jury selection and no effort was made to kind of remedy the prejudicial impact that may have on the jury. You know, I'm concerned about this case being set up for a reversal, for, you know, your client being asleep during jury selection and no effort was made to remedy it, and as a result of his counsel not making any effort to make sure the jurors would not hold it against him, you know.

[Boyd]: Well, I am not worried about the reflection it may have on me.

[Trial Court]: Maybe ineffective assistance of counsel.

[Boyd]: I know when I'm effective and when I am not.

[Trial Court]: Well, unfortunately, you don't get to decide that, the Court of Appeals gets to decide that.

[Boyd]: Well, they can take a flying leap, if they want to. I just know I've already assessed the thing, it's gone through my brilliant mind as to how I want to handle this, and I would prefer that it just be left alone....

The Texas Supreme Court has recently emphasized,

In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. The duty is highest when the attorney ... takes a position adverse to his or her client's interests. As Justice Cardozo observed, "[a fiduciary] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." Accordingly, a lawyer must conduct his or her business with inveterate honesty and loyalty, *always keeping the client's best interest in mind.*

*Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 560–61 (Tex.2006) (emphasis added) (citations omitted). The Texas Disciplinary Rules of Professional Conduct provide, "As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." PREAMBLE: A LAWYER'S RESPONSIBILITIES 2. Moreover, "a lawyer should act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01 cmt. 6. Thus, "[l]oyalty is an essential element in the lawyer's relationship to a client." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06 cmt. 1. A lawyer simply should not represent a client "if undertaking the representation would result in an improper conflict of interest, for example, *when the client is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.*" TEX. DISCIPLINARY R. PROF'L CONDUCT 6.01 cmt. 1 (emphasis added).

The application of these principles in regard to the representation of an accused in a criminal case is no less stringent. Boyd engaged in conduct that is simply unacceptable and totally at odds with the fiduciary duties that he owed to his client. He aligned himself with the State, treated appellant as a hostile witness, and called him "a liar" when appellant's case depended upon his credibility. He brought up his disagreement with appellant over his decision to testify in front of the jury, told him that his personality "sucks," and queried that although appellant was saying he was "a nice guy," appellant in fact had "gotten awful mad" at Boyd. In fact, the relationship between appellant and Boyd had deteriorated to the point that appellant had asked Boyd not to show up at trial. When the trial court expressed its concern about Boyd's conduct early in the process during voir dire, Boyd clearly did not care about the consequences of his behavior and his omissions in his representation.

In reaching its conclusion that Boyd was simply "acknowledging the shortcomings" of appellant, the majority misapplies the United States Supreme Court's opinion and holding in *Gentry,* which is not at all "similar." *See Gentry,* 540 U.S. 1, 124 S.Ct. 1. In *Gentry,* Gentry complained on direct appeal that "his trial counsel's closing argument deprived him of his right to effective assistance of counsel." 540 U.S. at 4, 124 S.Ct. at 5. The California Court of Appeal rejected his contention, and the California Supreme Court denied review. *Id.* Although the United States District Court denied Gentry's petition for federal habeas relief, the United States Court of Appeals for the Ninth Circuit reversed. *Id.* The Supreme Court then reversed the Ninth Circuit, holding that it "erred in finding the California Court of Appeal's decision objectively unreasonably." *Id.,* 540 U.S. at 4, 124 S.Ct. at 6.

In reaching its decision, the Ninth Circuit discussed a number of "flaws" in the closing argument of Gentry's trial counsel. It focused primarily on the failure of Gentry's counsel to "highlight various ... potentially exculpatory pieces of evidence."

*Id.*, 540 U.S. at 3, 124 S.Ct. at 3–4. It also found fault in the following portion of counsel's argument:

> The question is, did he intend to stab her? He said he did it by accident. If he's lying and you think he's lying then you have to convict him. If you don't think he's lying, bad person, lousy drug addict, stinking thief, jail bird, all that to the contrary, he's not guilty. It's as simple as that. I don't care if he's been in prison. And for the sake of this thing you ought not care because that doesn't have anything to do with what happened on April 30th, 1994.

*Id.*, 540 U.S. at 5, 124 S.Ct. at 6. The Ninth Circuit was concerned that counsel had taken "a gratuitous swipe" at his client's character. *Id.*, 540 U.S. at 9, 124 S.Ct. at 6. The Supreme Court rejected the Ninth Circuit's concerns, emphasizing that although the right to effective assistance of counsel extends to closing arguments,

> counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.

*Id.*, 540 U.S. at 4, 124 S.Ct. at 5–6 (citations omitted). In regard to counsel's argument about Gentry's credibility, the Supreme Court noted that,

> By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case.

*Id.*, 540 U.S. at 9, 124 S.Ct. at 6.

Here, in stark contrast, Boyd was not making a closing argument and he was in no way persuading the jury to focus on other relevant issues in the case. His treatment of his client as a hostile witness on direct examination, re-emphasizing the State's impeachment of his credibility, can in no rational sense be considered sound trial strategy. Boyd went out of his way to ensure that the jury would remember that appellant was "a liar" and his personality "sucked."

Moreover, *Gentry* is also inapplicable given its procedural posture. As noted by the Supreme Court,

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

*Id.*, 540 U.S. at 4, 124 S.Ct. at 5 (citations omitted). Thus, not only is *Gentry* different factually, its "doubly deferential" standard of review is inapplicable as well. I would hold that Boyd's conduct, involving violations of his fiduciary duties to appellant, constituted ineffective assistance of counsel. Moreover, his conduct was deficient to the point that it undermines confidence in the outcome of the trial. Accordingly, I would sustain this portion of appellant's issue, reverse the judgment of the trial court, and remand the case for a

new trial. The majority's conclusion to the contrary is in serious error.