

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00413-CR

_____

LaDonna Lynn Welch, Appellant

V.

The State of Texas

---

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR13545

---

Before Kerr, Pittman, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. INTRODUCTION

After a car wreck in which she struck and killed a motorcyclist, Appellant LaDonna Lynn Welch pleaded guilty to the offense of intoxication manslaughter, a second-degree felony. *See* Tex. Penal Code Ann. § 49.08. A jury assessed Welch's punishment at 20 years' confinement, and the trial court sentenced her accordingly.

In one issue, Welch argues that her conviction should be reversed and her case remanded for a new punishment hearing because her trial counsel's performance was so deficient that she failed to receive effective assistance of counsel. She chronicles seven specific ways she believes her counsel's assistance was deficient:

1. He failed to offer evidence to prove that Welch was eligible for community supervision (probation) because she had no prior felony conviction;

2. He wept in front of the jury because his spouse recently died, and he is sensitive to death;

3. He failed to object to the prosecutor's comment on Welch's failure to testify;

4. He conceded that a vehicle is a deadly weapon;

5. He conveyed confusion over the law in his closing argument;

6. He only called one witness; and

7. He failed to convey the severity of the punishment.

As with most inadequate assistance claims brought by direct appeal, we lack an appropriate record to resolve Welch's challenges to her lawyer's performance. Further, both Welch's briefing—which misstates the standard for evaluating

2

ineffective-assistance-of-counsel claims occurring during the punishment phase—and the record we do have fail to demonstrate that actions of Welch's trial counsel prejudiced her. Finally, most of the deficiencies catalogued by Welch appear to be more differences in opinion about the tactical decisions of her trial counsel than a challenge to his competence. We affirm.

## II. BACKGROUND

### A. January 31, 2016

In the early afternoon of January 31, 2016, David West was driving his motorcycle northbound on F.M. 4 in Hood County. His wife was riding her trike motorcycle alongside him. Welch was driving a Dodge truck in the opposite direction.

Another motorist was driving northbound on F.M. 4 in front of David when he saw that the Dodge truck traveling southbound had veered into the northbound lane. The northbound motorist said that he initially thought the Dodge truck was trying to pass, but when he realized that the driver was not aware of which lane she was in, he "hit the ditch . . . to get out of the way." When he looked over, he saw that the driver of the Dodge truck was looking down at her lap and not even looking at the road and that at no point did he see the driver attempt to brake or correct. In his rearview mirror, he saw the Dodge truck strike the motorcycle, which caused David's body to fly through the air over the truck.

3

Another motorist driving on F.M. 4 at the time also witnessed the crash. She stated that the impact sent David "straight up in the air," making him look "like a rag doll." When first responders arrived only minutes after the crash, they "very quickly" determined that David was deceased.

Welch was indicted and charged with one count of intoxication manslaughter, one count of manslaughter, and one count of criminally negligent homicide. Each count included an allegation that Welch used a deadly weapon, her truck, in the commission of each offense.

## B. Trial Proceedings

Welch waived arraignment and, after receiving admonishments from the trial court, pleaded guilty to the charge of intoxication manslaughter.[1] She elected to have a jury assess her punishment, but before the punishment hearing, Welch filed an application for felony probation.

### 1. Witnesses' Testimony

At the punishment trial, the State called eleven witnesses and Welch called one. Among the State's witnesses was a trooper with the Department of Public Safety (DPS), who testified that he was dispatched to the scene of the crash. The DPS

---

[1]The admonishments included the following relevant exchange regarding Welch's trial counsel:

> THE COURT: And ma'am, have you been satisfied with [your trial counsel's] representation?

> DEFENDANT: Yes, Your Honor.

4

trooper spoke to Welch at the scene and observed that her breath smelled of alcohol and that her eyes appeared red and "glassy." The DPS trooper testified that Welch stated to him that as she was driving, "she was looking down at her phone, and she was texting, and when she looked back up, she realized she was on the wrong side of the road, and she saw the motorcycle rider but was unable to avoid him." The DPS trooper said that he administered a voluntary field-sobriety test, which Welch failed, so he placed her under arrest for DWI. Welch was administered a breathalyzer test over an hour after the crash, and her results were a blood-alcohol content of .106 and .098—both over the legal limit.

Another witness testified that after the crash she saw Welch pour liquid out of beer cans and then throw them out of the truck.

A second DPS trooper also testified. The second trooper stated that he arrived at the scene of the crash to assist the first DPS trooper by taking inventories on the vehicles and releasing them to wrecker services. The second DPS trooper was asked about several of the State's exhibits, which included a copy of a receipt found in Welch's truck for the purchase of two alcoholic beverages approximately eight minutes prior to the crash. The second DPS trooper testified that he found an open beer can in the bed of Welch's truck.

The second DPS trooper was then asked about a domestic disturbance call he responded to in August 2016—eight months after the crash. He said that when he

arrived at the scene, he found Welch intoxicated and presenting a danger to herself or others, so he arrested her for public intoxication.

A community supervision officer with Hood County's "Adult Probation Department" testified that a condition of Welch bonding out of jail was the installation of an ignition-interlock device that would prevent Welch from starting her vehicle if she had above a .03 blood-alcohol content. The community supervision officer said that just a few months after the crash, the interlock device reported "a number of high alcohol -- high BAC alcohol readings." He spoke to Welch, and although she admitted to drinking beer, she denied trying to start her vehicle. However, the community supervision officer was able to confirm "from the pictures in -- from the interlock device that it was her, in fact, that was trying to start the -- the vehicle." He reported Welch's admission of alcohol consumption and the positive alcohol reading from the interlock device to the trial court, resulting in the forfeiture of her bond and her return to jail.

David's son and brother testified as well. David's son testified that David's death was "really hard," and David's brother testified that it was "devastating" and "shocking."

The final witness was Welch's husband, and he was the only witness that Welch's counsel called to testify. He provided some background about Welch, namely that she is from Tennessee; that they work together as pipefitters, which is what brought them to Texas; that when he and Welch were married, he already had

6

one child and she had three; and that they now have three grandchildren. Welch's husband stated that after the crash Welch went "crazy" and that she was "depressed," "felt guilty," and had been prescribed medication. He testified that only six years before, Welch's own father had been killed by a car while he was riding his motorcycle. He further said that Welch felt remorse over the crash and that he believed, based on the support of their family, Welch could fulfill the conditions of probation, which would include completely abstaining from alcohol. On cross-examination, he theorized that after the crash, Welch "was trying to kill herself, because she kept saying that she needed to die in the accident."

### 2. Jury Charge, Closing Argument, and Sentence

After both sides rested, the trial court read the charge to the jurors. The jury charge provided the jurors with four verdict-form options, two of which provided for a sentence of less than 10 years and a recommendation that Welch's sentence be suspended and Welch be placed on community supervision.

During closing argument, the State highlighted that even after the crash, Welch had been arrested for public intoxication and had attempted to start her vehicle after she had been drinking. According to the prosecutor, these events demonstrated that Welch had no remorse, shame, or guilt because she was not changing her behavior.[2]

---

[2][PROSECUTOR:] And if that's not enough, you would think that regardless of how you get to the point to where you're drunk, you know, on a Sunday afternoon and kill somebody, however you get there, *you would think that if you had any remorse at all or any shame or any guilt, that you*

7

Welch's counsel began his closing argument by conceding that a vehicle was a deadly weapon—stating he viewed the concession as necessary to preserve his credibility with the jury.[3] But the bulk of Welch's counsel's closing argument focused on asking the jurors for a ten-year probated sentence. He explained that even in that case, Welch would be required to spend 120 days in jail, and that the trial court has a

---

*would change your behavior.* And we know that, ironically, it's the same trooper that responds and arrests her for public intoxication, getting drunk and raising Cain, just a few months after this happened. And even worse, in my mind, is that Judge Walton put a condition on her bond that she have this machine in her car to where she can't drink and drive. And but for Judge Walton, we might be here again on another trial, because she's in that car, blowing on that tube, trying to get that car started just two months after she's killed somebody.

[Emphasis added.]

[3][WELCH'S COUNSEL:] . . . I want to start by discussing the last page, the so-called "special issue." Here in Texas, we call them -- call it a deadly weapon finding. You ask yourself, is a motor vehicle something that in the manner of its use or intended use is capable of causing death or serious bodily injury? *Now, you know, if I were to blow all my credibility in front you guys, I would say, "Well, no." The fact of the matter is any time any of us starts our car and pulls it onto a public road, that vehicle is capable of causing serious bodily injury or death. It's the nature of the -- the instrument. So I'm not going to argue about that. . . .*

. . . .

. . . That's one of those things that has always seemed rather strange to me. But anyhow, it's pretty hard to argue that a car can't be a deadly weapon. I got an ink pen in my pocket that could qualify as a deadly weapon.

[Emphasis added.]

8

variety of "stringent rehabilitation facilities" where it could send Welch. Welch's counsel argued that the State's rehabilitation programs would not be easy for Welch, as he described one as "a very nasty program" but "very effective."

Finally, Welch's counsel took exception to the prosecutor's characterization of Welch as lacking remorse and became so upset that the court reporter indicated that Welch's counsel was weeping.[4]

The jurors answered "Yes" to the question of whether Welch's truck was a deadly weapon and unanimously assessed Welch's punishment at 20 years' confinement. The trial court rendered judgment in accordance with the jury's verdict, and this appeal followed.

---

[4][WELCH'S COUNSEL:] We've got a situation, I -- I -- I disagree with the State when they claim that this lady doesn't have any remorse about what happened. Her father, growing up, it happened the same way. (Weeping) That's why she -- that's why she said she should have died in that wreck. I apologize. I just lost my wife, and I'm -- I'm sensitive to death issues.

I think this lady should be given a chance. Yes, Granddad West is gone. There's nothing we can do about that. There's no point taking Grandma Welch away from her grandkids, you know, for some really extended time, and putting her in a nasty Texas prison, which basically are just as much of an incubation unit for future criminals as they are rehab -- rehabilitation facilities.

### III. DISCUSSION

## A. Direct Appeal is Generally an "Inadequate Vehicle" for Raising an Ineffective-Assistance-of-Counsel Claim

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that her counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Although an ineffective-assistance-of-counsel claim may be raised on direct appeal, "[a] petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). The court of criminal appeals has affirmed that direct appeal is "usually an inadequate vehicle for raising such a claim" because the record is generally undeveloped and because "trial counsel has not had an opportunity to respond to these areas of concern." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Indeed, the record on direct appeal will generally "not be sufficient to show that counsel's

representation was so deficient as to meet the first part of the *Strickland* standard" as "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record." *Mitchell*, 68 S.W.3d at 642.

"[C]ounsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent." *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). In reviewing allegations under the deficient-performance prong of *Strickland*, an appellate court "must not second-guess legitimate strategic or tactical decisions made by trial counsel in the midst of trial." *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008).

**B. Welch Misstates the Law for Reviewing Allegations of Deficient Performance during the Punishment Phase**

Welch begins by citing *Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980), to contend that "[t]he standard of review for ineffective assistance of counsel at the punishment stage differs from the *Strickland* two-prong test" and that "[t]he right to effective assistance of counsel at the punishment stage entitles appellant to counsel 'reasonably likely to render and rendering reasonably effective assistance.'" This statement is incorrect.

11

Under *Duffy*, a court of criminal appeals case decided before *Strickland*, the defendant was not required to demonstrate prejudice when the alleged deficient performance occurred during a noncapital sentencing proceeding. 607 S.W.2d at 516. However, nearly twenty years ago in *Hernandez v. State*, the court of criminal appeals overruled *Duffy* and held that both prongs of the *Strickland* test are applicable to ineffective-assistance-of-counsel claims alleging deficient attorney performance at a punishment hearing. 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

Thus, to establish an ineffective-assistance-of-counsel claim during a punishment proceeding, a defendant is required to prove both deficient performance and prejudice arising from the deficient attorney performance. *Id.*; *Garcia v. State*, No. 13-98-144-CR, 1999 WL 33757537, at *1 (Tex. App.—Corpus Christi Dec. 30, 1999, no pet.) (not designated for publication) (affirming that infective assistance of counsel, "whether it pertains to the guilt/innocence phase or the punishment phase, is reviewed according to the [two-pronged] standard in *Strickland*").

## C. *Strickland*'s Prejudice Prong

Most times, resolution of the prejudice question disposes of an ineffective-assistance-of-counsel claim. For that reason, courts may review a claim of prejudice before examining the alleged deficiencies in counsel's performance:

> [T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

12

alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—a trial with a reliable result.  *Id.* at 687, 104 S. Ct. at 2064.  In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance.  *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308.  We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged.  *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  *Id.* at 696, 104 S. Ct. at 2069.

**D.  Analysis**

### 1.  Welch Failed to Demonstrate Prejudice

Welch devotes a single paragraph of her 47-page brief to the claim of prejudice, and that paragraph does no more than rehash her counsel's alleged deficiencies:

> The harm and prejudice in this case is the 20 years with a deadly weapon finding.  If counsel's wife had not recently passed, there would have been no weeping before the jury, no sensitivity to death issues, and

a better effort to prove up eligibility for probation. There would have been an objection to the prosecutor's indirect comment on Appellant's failure to testify, and more focus on mitigating punishment. Without the recent loss of a spouse, you would have seen a clearer mind that could present a clear argument to the jury, and ask them to allow Ladonna Lynn Welch to go prove herself. The jury did not get to see the Ladonna Lynn Welch that had never been in trouble before, nor did the jury get to see the Ladonna Lynn Welch who acted soberly for over a year before probation, nor the Ladonna Lynn Welch who had a good start at proving herself.

This conclusory summation, which relies solely on conjecture and speculation, fails to show a reasonable probability that the allegedly deficient performance from her counsel caused Welch prejudice; thus, we overrule her sole issue on this basis. *See Hernandez*, 988 S.W.2d at 771–72; *Garcia*, 1999 WL 33757537, at *3 ("Even if we assume, for the sake of argument, appellant successfully demonstrated counsel's deficient performance, appellant has failed to establish a reasonable probability that, but for counsel's error, the punishment assessed would have been different.").

## 2. No Record to Support Deficient Performance

Though Welch fails to demonstrate prejudice, in the interest of thoroughness, we review and briefly analyze the alleged individual deficiencies of her counsel's representation. In doing so, we note that while the first alleged deficiency is reviewable on this record, the second, third, fourth, fifth, sixth, and seventh alleged deficiencies consist of Welch's appellate counsel inappropriately second-guessing Welch's trial counsel's strategy and demonstrating how the lack of a developed record

14

plagues an ineffective-assistance-of-counsel claim on direct appeal. *Goodspeed*, 187 S.W.3d at 392.

### a. No Evidence of No Prior Felony Convictions

Welch argues that her trial counsel's performance was deficient because he failed to present evidence that Welch had never been convicted of a felony—a necessary requirement for a defendant to establish in order to receive community supervision. *See Tenery v. State*, 680 S.W.2d 629, 640 (Tex. App.—Corpus Christi 1984, pet. ref'd) ("Appellant, not the State, had the burden of establishing his eligibility for probation. A jury may not recommend community supervision in its verdict unless both the sworn motion *and the evidence* show, and the jury finds in its verdict, that the defendant has never before been convicted of a felony in this or any other state . . . ." (citation omitted)). Welch contends that even though the application for community supervision was filed and even though the jury charge correctly instructed the jurors that the application had been filed, it was her burden to establish that she had never been convicted of a felony and because her counsel set forth no such evidence, his performance was deficient. The sentence imposed by the jury made Welch ineligible for community supervision; thus, her contention is of no moment.

In addition to having never been convicted of a felony, to be eligible for community supervision, a defendant must receive a sentence of not more than 10 years. *See* Tex. Code Crim. Proc. Ann. art. 42A.056(1). The jurors assessed Welch's punishment at 20 years' confinement. Welch offers no argument why the jury would

have imposed a shorter sentence had it known she lacked prior felony convictions. Thus, because the jury assessed Welch's punishment at 20 years' confinement, preventing Welch from qualifying for community supervision no matter her prior criminal record, Welch's counsel's failure to present evidence that Welch had never previously been convicted of a felony was inconsequential. *See Ex parte Cash*, 178 S.W.3d 816, 819 (Tex. Crim. App. 2005) (finding no ineffective assistance of counsel for failing to properly file a pretrial motion for probation because "the record reflects that the jury sentenced applicant to 40 years in prison, which is considerably more than 10 years in prison"); *Gonzales v. State*, 748 S.W.2d 510, 513 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (holding that "[b]ecause the jury assessed punishment at 40 years confinement, the appellant was ineligible to receive probation," so the "trial counsel's failure to establish the appellant's entitlement to probation was inconsequential").

### b. Crying During Closing Argument

Welch next argues that her counsel's statement that he is sensitive to death because his wife had recently died and the fact that he also wept during closing argument represents deficient performance. Welch cites no authority for the proposition that her trial counsel's "sensitivity to death issues," even if true, represents deficient performance. Although Welch contends that by crying when discussing death, her trial counsel was effectively aligning himself with the prosecutor's case, her contention is mere speculation and essentially impermissibly

16

invites us to second-guess her trial counsel's strategy in how to present his closing argument. *Cf. Bone*, 77 S.W.3d at 836 ("A vague, inarticulate sense that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent."). Accordingly, nothing in our record supports that Welch's trial counsel's performance was deficient due to weeping or having "sensitivity to death issues."

### c. Failure to Object to the Prosecutor's Closing Argument

Welch next complains that her counsel's assistance was ineffective because he failed to object to the prosecutor's closing argument that implicitly commented on Welch's failure to testify when the prosecutor stated Welch had not shown any remorse. However, the prosecutor did not comment about Welch's failure to testify at the punishment trial, but instead about her actions after the offense.[5]

Therefore, Welch's trial counsel's performance was not deficient for failing to object.

### d. Concession of a Vehicle as a Deadly Weapon

Welch next complains that her trial counsel's performance was deficient because he conceded in closing argument that a vehicle is a deadly weapon. The court

---

[5]But again, even if the prosecutor's closing argument had included an improper comment on Welch's failure to testify at the punishment trial, Welch has failed to demonstrate that the isolated comments, situated within the broader closing argument and against the backdrop of the testimony, caused her prejudice. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004).

17

of criminal appeals has held that whether a vehicle constitutes a deadly weapon is decided on a case-by-case basis. *See Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005) ("We do not suggest that a defendant should be charged with using a vehicle as a deadly weapon every time the offense of evading arrest or detention is committed. The determination to seek a deadly weapon finding in those circumstances is a fact-specific inquiry, and the facts will not always support such a finding."). For a vehicle to be considered a deadly weapon, it must be shown that the vehicle "in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B); *Drichas*, 175 S.W.3d at 798.

Given the overwhelming evidence at the punishment trial that the vehicle driven by Welch caused the death of David, we cannot conclude that Welch's counsel's strategy to concede that a vehicle was a deadly weapon was illogical or unreasonable when Welch's counsel even explained that he was conceding the issue to maintain his credibility. *See Martin v. State*, 265 S.W.3d 435, 447 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (finding no ineffective assistance of counsel when defense counsel called the defendant a liar and a thief because "taken in the full context of counsel's apparent strategy to gain credibility with the jury, we cannot conclude that these statements constituted ineffective assistance of counsel").

Accordingly, his concession during closing argument did not represent deficient performance.

### e. Statement of Community-Supervision Law

Welch complains that her trial counsel's statement of community-supervision law during closing argument "seemed to convey to the jury confusion about how the law works on probation." These kinds of vague complaints are insufficient to demonstrate deficient performance. *See Bone*, 77 S.W.3d at 836.

Moreover, our review of Welch's counsel's closing argument does not reveal such confusion. Rather, because Welch's counsel's closing argument was focused on trying to obtain community supervision rather than incarceration, his concern was not to provide a statement of community-supervision law, but to explain that community supervision would not mean that Welch was getting off lightly. Accordingly, his statement of community-supervision law does not present deficient performance.

### f. Only Calling Welch's Husband as a Witness and Not Emphasizing the Gravity of Welch's Punishment

In her sixth and seventh allegations of deficient performance, Welch complains that her trial counsel should have called more than one witness and should have emphasized the gravity of Welch's punishment. However, decisions regarding calling witnesses and what points to emphasize in closing argument were Welch's trial counsel's to make. *See Duckworth v. State*, 89 S.W.3d 747, 752 (Tex. App.—Dallas 2002, no pet.) (rejecting ineffective-assistance-of-counsel argument on direct appeal that "counsel's closing argument should have been more strenuous"); *see also McCoy v. Louisiana*, 138 S. Ct. 1500, 1516 (2018) (Alito, J., dissenting) (reciting that "[a]mong

19

the decisions that counsel is free to make unilaterally are . . . calling defense witnesses[] and deciding what to say in summation"). Nothing in the record reveals any other witnesses Welch would have called.

Therefore, we conclude that Welch's trial counsel's performance was not deficient under the first prong of *Strickland.*

## IV. CONCLUSION

We conclude that Welch failed to show any prejudice arising from her trial counsel's performance. Accordingly, we overrule her sole issue and affirm the judgment of the trial court.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 31, 2019