Opinion issued May 10, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00791-CR

———————————

Breeanna Brown, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the County Criminal Court at Law No. 1

Harris County, Texas



Trial Court Case No. 1667479

 



 

MEMORANDUM OPINION

          A
jury convicted Breeanna Brown of the class B misdemeanor
offense of prostitution for knowingly agreeing to engage in sexual conduct for
a fee and assessed punishment at ninety days’ confinement and a $1000 fine.[1] Brown appeals, contending
that the State presented insufficient evidence of an agreement to engage in
sexual conduct for a fee and that she received ineffective assistance of
counsel during the punishment phase of her trial. 

We affirm the trial court’s
judgment. 

Background

          Brown was charged by information
with misdemeanor prostitution following an undercover investigation by the
Houston Police Department (HPD). The State presented testimony from a single
witness at trial: B. Surginer, a thirty-one-year
veteran of the HPD with more than fifteen years’ experience in the Vice
Division. Surginer testified that he came across a
web-advertisement for escort services while conducting a “sting operation” of
internet-based prostitution. He suspected the escort was involved in
prostitution because the posting included semi-nude photographs and advertised fees
based on thirty-minute and one-hour time increments. 

After viewing similar
advertisements placed by the same escort on five separate occasions, Surginer called the telephone number listed and arranged to
meet the woman who answered at a motel that rents rooms by the hour. Shortly
after arranging the meeting, Surginer received a
return call from the same woman clarifying that her fee would be $300 for one
hour. Surginer agreed to the fee, but he and the
woman did not discuss what the fee included. He stated that “it’s very rare for
anybody to talk about anything other than availability on the phone.” 

          Surginer identified Brown as the woman who met him at the motel.
She and Surginer had a short, casual conversation before
she told him to “get comfortable.” Based on his experience in the Vice
Division, Surginer explained that, in the sex
industry, to “get comfortable” means to disrobe. As he undressed, Surginer offered to “take care of the business part” and reached
into his pocket to retrieve money. Brown refused his offer and told him, “Not
yet. Get comfortable first.” She then went into the bathroom, and Surginer removed all of his clothing. Surginer
observed that Brown was not surprised or upset that he was completely nude when
she came out of the bathroom. Instead, she retrieved a pouch containing a
number of condoms and personal lubricant from her purse. Surginer
told the jury that Brown “took out a condom, opened the condom, and . . .
started walking over to the front of me.” She told him to “just lay back.” 

Because the purpose of his
investigation was to discover whether Brown would agree to engage in a sexual
act for a fee, Surginer asked if she would perform a
“blow job without the condom,” to which Brown responded, “Everything I do is
covered.” He then asked Brown whether she would perform other specific sexual
acts, but she told him “no,” not to talk about it, or to “just lay back” or
“relax.” Surginer explained that, during this
conversation, Brown stood in front of him with the condom. He was not surprised
that Brown refused to verbalize an affirmative response to his questions. He
indicated that such behavior is typical of persons working in the sex industry
because “a lot of times they are worried about being recorded and being recorded
talking about that.” Nevertheless, believing that Brown’s behavior had demonstrated
her intention to perform a sexual act for a fee, Surginer
identified himself as a police officer. Brown grabbed her cell phone and yelled,
“It’s the cops.” The State introduced an audio recording of the full
interaction between Surginer and Brown into evidence
and played it for the jury. 

          On
cross-examination, Surginer acknowledged that merely
working as an escort is not unlawful and that the web-advertisement prompting
his investigation of Brown did not expressly mention any illegal acts of
prostitution. He also acknowledged that Brown was not dressed provocatively
when she arrived at the motel; however, he explained that women working as
prostitutes frequently dress in an understated manner so as not to draw
attention to themselves. Although Brown never removed her clothing and never
verbally consented to perform any specific sex act for a fee, Surginer believed “her intentions were clear by her actions.”  

The jury returned a guilty verdict,
and Brown elected not to give the jury the option to grant her probation during
punishment, making the range of punishment zero to 180 days confinement and a
fine of up to $2,000. See Tex. Penal Code Ann. § 12.22 (West 2011). Surginer, again, was the only testifying witness at the
punishment phase of Brown’s trial. He suggested that Brown continued to work as
an escort after her arrest based on his observation of additional
web-advertisements posted by her in the days before her initial trial setting. Surginer also conveyed that other members of HPD’s Vice
Division had contacted Brown using the telephone number listed in the postings
and arranged to meet with her, but no additional charges were filed against
her. According to Surginer, no additional charges could
be filed because Brown had “learned her lesson and knows not to say anything
about money. And as soon as they start talking about any kind of sex act, she
says, I’ve got to go[.]” Brown did not testify or
present any mitigating evidence during the punishment phase of trial.  

          After
the jury sentenced Brown to ninety days’ confinement and a $1000 fine, Brown
moved for a new trial based on the ineffective assistance of counsel. In the
affidavit attached to her motion for new trial, Brown complained that her trial
counsel failed to request notice of the State’s intent to introduce evidence of
extraneous offenses and failed to present any mitigating evidence or inform
Brown of her right to testify during the punishment phase of trial. Brown
alleged that she was sexually assaulted as a child, lost her home at thirteen
years of age, and spent the rest of her childhood on the streets or in foster
homes. She suffered further abuse at the hands of a boyfriend later in life. She
asserted that the jury would have assessed a different punishment had that
information been presented. 

Trial counsel testified at a
hearing on Brown’s motion for new trial. Trial counsel acknowledged that she
did not properly request notice of the State’s intent to introduce evidence of
extraneous offenses as part of the discovery order filed with and approved by
the trial court. When asked why she did not present any mitigating evidence or
inform Brown of her right to testify, trial counsel responded that she and her
co-counsel knew Brown’s background might influence the jury and urged Brown to
testify on more than one occasion. After wavering between testifying and not
testifying, however, Brown refused to take the stand. Trial counsel testified
that she did not take any steps to establish Brown’s background beyond asking
Brown to testify—i.e., she
did not subpoena any other witnesses or attempt to introduce records of the
criminal proceeding arising from the sexual assault against Brown. During the
new trial hearing, the trial court admitted into evidence the prosecutor’s
affidavit averring that Brown’s trial counsel had informed the State of Brown’s
background during a break of the punishment phase of trial and expressed her
desire that Brown testify. At that point, the State suggested an agreed punishment
of probation, but Brown refused that offer. The trial court ultimately denied
Brown’s motion for new trial, and this appeal followed.

Sufficiency of the Evidence

          In her first issue, Brown argues
the evidence was insufficient to establish that she actually agreed to engage
in sexual conduct for a fee. Brown asserts that the State did not present any direct
evidence of an agreement to engage in sexual conduct for a fee and that such an
agreement cannot reasonably be inferred because no money exchanged hands, she
remained clothed and did not expressly instruct Surginer
to remove his clothing, and she never expressed a willingness to engage in any
sexual activity with Surginer.    

I.       Standard of Review

We review Brown’s challenge to the sufficiency of the
evidence under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 318–20, 99 S. Ct.
2781, 2788–89 (1979). See Ervin v. State, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet.
ref’d) (citing Brooks v. State, 323 S.W.3d 893, 894–913 (Tex. Crim.
App. 2010)). Under the Jackson standard, evidence is insufficient to
support a conviction if, considering all the record evidence in the light most
favorable to the verdict, no rational factfinder
could have found that each essential element of the charged offense was proven
beyond a reasonable doubt. See Jackson, 443 U.S. at 317, 318–19, 99 S. Ct. at 2788–89; Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both
direct and circumstantial evidence, and all reasonable inferences that may be
drawn from the evidence in making our determination. Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007). Evidence is insufficient under four
circumstances: (1) the record contains no evidence probative of an element of
the offense; (2) the record contains a mere “modicum” of evidence probative of
an element of the offense; (3) the evidence conclusively establishes a
reasonable doubt; and (4) the acts alleged do not constitute the criminal
offense charged. See Jackson, 443 U.S. at 314, 318 n.11, 320, 99 S.Ct.
at 2786, 2789 & n. 11; Laster, 275 S.W.3d at 518; Williams v. State, 235 S.W.3d 742, 750
(Tex. Crim. App. 2007). 

The Jackson standard
gives full play to the responsibility of the factfinder
to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts. See Jackson,
443 U.S. at 318–19, 99 S. Ct. at 2788–89; Clayton, 235 S.W.3d at 778. An
appellate court presumes the factfinder resolved any
conflicts in the evidence in favor of the verdict and defers to that
resolution, provided that the resolution is rational. See Jackson, 443
U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under
this standard, it must reverse the judgment and enter an order of acquittal. See
Tibbs v. Florida, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

II.      Agreement
to Engage in Sexual Conduct for a Fee

          A
person commits the offense of prostitution if she knowingly “offers to engage,
agrees to engage, or engages in sexual conduct for a fee.” Tex. Penal Code Ann. § 43.02(a)(1). The trial court’s charge narrowed the manner or means
of committing the offense by authorizing a conviction only if the jury found
Brown “unlawfully, knowingly agree[d] to engage in sexual conduct, namely,
sexual intercourse, to wit, straight sex or deviate sexual intercourse, to wit,
oral sex, with B. Surginer, for a fee[.]”[2] Thus, we will sustain
Brown’s conviction if the record contains sufficient evidence of a knowing
agreement to engage in sexual conduct for a fee. “Because direct evidence is
rarely available to prove the existence of an agreement, circumstantial
evidence is sufficient and is almost always needed.” Nwosoucha v. State, 325 S.W.3d 816, 831 (Tex. App.—Houston [14th Dist.]
2010, pet. ref’d).

          The
record here contains sufficient circumstantial evidence that Brown knowingly
agreed to engage in sexual conduct for a fee. Brown agreed to meet Surginer at a motel that rents rooms by the hour and to payment
of $300 for the hour she was to spend with Surginer
at that motel. Although Brown and Surginer did not
discuss what the fee included and the fee was not paid, the actual exchange of
money is not required to sustain a conviction for prostitution. See Tex.
Penal Code Ann. § 43.02(a)(1) (listing
statutory elements of offense); see also
Steinbach v. State, 979 S.W.2d 836, 841 n.8 (Tex. App.—Austin 1998, pet. ref’d) (“[I]n order to constitute the offense . . . a fee
need not be paid.”).

Once Brown arrived at the motel she
instructed Surginer to “get comfortable.” Based on
his thirty-one years of experience as a police officer and, more importantly,
more than fifteen years in the Vice Division, Surginer
knew that Brown’s instruction to “get comfortable” was an instruction to
disrobe. Brown was not surprised or uncomfortable when Surginer
disrobed; she did not ask him to put his clothing back on or to leave. Instead,
she retrieved a pouch containing condoms and personal lubricant from her purse,
opened one of the condoms, and stood in front of Surginer.
When he asked Brown whether she would perform certain sexual acts without a
condom, she responded only that, “Everything I do is covered.” Surginer expressed a willingness to pay Brown additional
money if she performed these acts. Although Brown did not verbalize any
agreement to perform the acts requested by Surginer, Surginer explained that it is not uncommon for women
working in the sex industry to refuse to state an express agreement out of fear
of being arrested or recorded. He understood Brown’s actions to mean that she
was agreeing to engage in sexual conduct for a fee. There is no requirement
that Surginer’s testimony be corroborated in order to
sustain Brown’s conviction, but the jury heard the audio recording of the
exchange between Brown and Surginer. See Morris v. State, 565
S.W.2d 534, 535 (Tex. Crim. App. 1978). Based on that audio recording
and Surginer’s testimony, the jury could reasonably
infer that Brown agreed to participate in sexual conduct for a fee. See McCarty v. State, 616 S.W.2d 194,
196-97 (Tex.
Crim. App. 1981) (holding that conviction for prostitution was supported by sufficient
evidence where implied offers were made by both defendant and arresting
officer).

           Accordingly, we overrule Brown’s first issue.

Ineffective Assistance of Counsel

          Brown argues in her second
issue that her counsel was ineffective during the punishment phase of trial for
three reasons: (1) counsel failed to inform Brown of her right to testify at
the punishment hearing; (2) counsel failed to investigate or offer evidence to
mitigate punishment, including evidence that Brown was abused as a child; and
(3) counsel failed to request notice of the State’s intent to introduce
evidence of extraneous offenses at the punishment hearing pursuant to article
37.07, section 3(g) of the Code of Criminal Procedure and Rule of Evidence
404(b). See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (West 2011); Tex. R. Evid. 404(b).


I.       Standard
of Review

          The
constitutional “right to counsel is ‘the right to the effective assistance of
counsel.’” Strickland v. Washington,
466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14
(1970)). To obtain reversal of her conviction based on the ineffective
assistance of counsel, Brown must make two showings: (1) counsel’s performance was
deficient and (2) counsel’s deficient performance prejudiced her defense. Strickland, 466 U.S. at 687-94, 104 S. Ct. at 2064-68; Andrews v. State, 159 S.W.3d 98, 102
(Tex. Crim. App. 2005); Martin v. State,
265 S.W.3d 435, 440 (Tex. App.—Houston [1st Dist.] 2007, no pet.). A
failure to make either showing defeats an ineffective-assistance claim. Rylander v. State, 101 S.W.3d
107, 110 (Tex. Crim. App. 2003); Martin,
265 S.W.3d at 440. A court need not address both components of the
inquiry if a defendant makes an insufficient showing on one. Strickland, 466 U.S. at 697, 104 S. Ct.
at 2069. 

To determine whether Brown has
shown counsel’s performance was deficient under the first prong of our analysis,
we look to the totality of the representation and the particular circumstances
of the case. Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is
whether counsel’s performance fell below an “objective standard of
reasonableness,” considering all the circumstances and prevailing professional
norms. Strickland,
466 U.S. at 688-89,
104 S. Ct. at 2065. We indulge a strong presumption that counsel
rendered adequate assistance and exercised reasonable professional judgment in
making significant decisions. Id. at 690, 104 S. Ct. at 2066; Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). “To overcome
the presumption of reasonable professional assistance, ‘any allegation of
ineffectiveness must be firmly founded in the record[.]’”
Salinas, 163 S.W.3d at 740 (quoting Thompson, 9 S.W.3d at 813).  

In the second prong of our analysis,
we determine whether Brown has shown a reasonable probability that, but for her
counsel’s deficient performance, the result of the proceeding would have been
different. See Strickland, 466 U.S.
at 687, 694, 104 S. Ct. at 2064, 2068; Andrews,
159 S.W.3d at 102. A “reasonable
probability” is a “probability sufficient to undermine confidence in the
outcome.” Strickland,
466 U.S. at 694, 104 S. Ct. at 2068. 


          We consider
these prongs “through the prism of an abuse of discretion standard” when, as
here, an appellant raises the issue of ineffective assistance in a motion for
new trial. State v. Gill, 967 S.W.2d
540, 542 (Tex. App.—Austin 1998, pet. ref’d); see also Rodriguez v. State, 329 S.W.3d
74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We view evidence in the
light most favorable to the trial court’s ruling, and we will reverse only if
no reasonable view of the record could support the trial court’s finding. Charles v. State, 146
S.W.3d 204, 207-08
(Tex. Crim. App. 2004), superseded by
rule on other grounds by Tex. R. App. P. 21.8(b).  

I.       Waiver of Right to Testify in Mitigation
of Punishment

Brown asserts that the ineffective
assistance provided by her trial counsel at the punishment hearing renders Brown’s
waiver of the right to testify involuntary. Brown testified by affidavit as
follows:

I am not knowledgeable in
the area of criminal law and I relied upon my attorney for legal advice and
representation. I was unaware that I could testify about my background and upbringing
during the punishment phase of trial. My attorney did not discuss with me the
option of having me testify about my background in punishment as a means of
mitigation.

 

Because trial counsel testified at the hearing on
Brown’s motion for new trial, however, we have insight into counsel’s strategy
during punishment. Trial counsel directly contradicted Brown’s statement that
she was uninformed of her right to testify. Trial counsel indicated her
awareness of the mitigating effect Brown’s background might have on the jury’s
assessment of punishment; accordingly, trial counsel and co-counsel urged Brown
to testify on multiple occasions. Brown acknowledged to trial counsel that Brown
understood both her right to testify and the importance of her testimony as mitigating
evidence. Nevertheless, Brown refused to testify. According to trial counsel,
Brown’s refusal stemmed from a fear that the jury would “judge” her harshly
based on her background or from anger directed at Surginer.
Brown warned trial counsel not to put her on the stand because, “if I get on
the stand, all I want to tell them about is how he [Surginer]
allowed me to do X, Y and Z.[[3]] That’s exactly what she
said and exactly how it was said. She was not going into the past stuff and
that’s what would be helpful, not the other stuff.” Trial counsel also
testified that Brown became generally resistant to following the advice of
counsel after the jury returned a guilty verdict in the first phase of trial. 

          Because
the evidence of whether trial counsel informed Brown of her right to testify at
punishment was conflicting, the trial court was within its discretion to
resolve the conflict. As the fact-finder during the new trial hearing, the
trial court was free to believe all, some, or none of the assertions upon which
Brown’s claims of ineffective assistance were based. Charles, 146 S.W.3d at 206, 212-13.
We defer to the trial court’s resolution of historical fact, and we conclude
that a reasonable view of the evidence supports the trial court’s decision to
deny Brown’s motion for new trial based on ineffective assistance in failing to
inform Brown of her right to testify. Accordingly, the evidence supports the
trial court’s decision. 

II.      Failure
to Present Other Evidence of Mitigating Circumstances

Brown next
complains that trial counsel failed to present evidence of the abuse and
difficult circumstances Brown endured as a child during the punishment hearing.
According to Brown, the presentation of such evidence through Brown’s testimony
or the testimony of a family member would have supported a lesser sentence. Viewing
the evidence in the light most favorable to the trial court’s ruling and
looking at the totality of the representation and the particular circumstances
of this case, however, we conclude that Brown failed to establish that her
trial counsel’s performance fell below an objective standard of reasonableness,
and therefore the first prong of Strickland
is not satisfied. See Thompson, 9 S.W.3d at 812. 

Again, Brown’s
assertions with respect to trial counsel’s failure to present mitigation
evidence are controverted. Trial counsel testified that she was aware Brown
suffered abuse as a child, moved out of her mother’s home at a young age, and
then suffered abuse again at the hands of a boyfriend. Trial counsel testified
that she informed Brown of the mitigating effect evidence of her background
might have on the punishment determination, but Brown refused to testify. Because
we have already determined that the trial court was free to disbelieve Brown’s claim
that she would have testified to her history of abuse had she been informed of
her right to testify at punishment, trial counsel’s failure to present Brown’s
testimony as mitigation evidence cannot serve as the basis for an ineffective
assistance claim. 

To obtain relief on her ineffective assistance claim
based on other uncalled witnesses, Brown was required to show that the
witnesses would have been available to testify and that their testimony would
have benefitted the defense. See Perez v.
State, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (“[T]he failure to call
witnesses as the guilt-innocence and punishment stages is irrelevant absent a
showing that such witnesses were available and appellant would benefit from
their testimony); Ex parte White, 160
S.W.3d 46, 52 (Tex. Crim. App. 2004); Nwosoucha, 325 S.W.3d at 830. Although she does not specify
whom the prosecution should have called as witnesses in her briefing, Brown
identified her mother, grandmother, and a friend as potential witnesses at the
new trial hearing. The record, however, does not indicate that any of these
three witnesses would have been available to testify. Nor does the record
indicate that Brown would have benefitted from their testimony. There is no
evidence that either Brown’s grandmother or her friend had knowledge of the
abuse alleged in Brown’s affidavit. And, given the apparently-strained
relationship between Brown and her mother, there is no evidence that Brown’s
mother would have testified in a favorable manner. Accordingly, the record does
not establish that trial counsel’s performance was deficient.[4] 

III.    Failure to Request Notice of Extraneous
Offenses or Bad Acts

          Brown finally asserts that
trial counsel was ineffective in failing to request notice of the State’s
intent to introduce evidence of extraneous offenses or bad acts during punishment—particularly Surginer’s
testimony that Brown continued to post web-advertisements for escorting
services up until the trial setting and that HPD’s Vice Division had arranged a
meeting with Brown at a hotel room on one other occasion. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(g); Tex. R. Evid. 404(b). According to Brown, (1) trial counsel’s failure to
request notice under article 37.07 or Rule of Evidence 404(b) rendered her
unprepared for the punishment phase of trial and (2) the introduction of such evidence
influenced the jury to assess a harsher sentence because the jury could infer
from the evidence that Brown was involved in other prostitution cases and
continued to work in the sex industry. 

It was undisputed at the new trial
hearing that trial counsel did not request notice of the State’s intent to
introduce evidence of extraneous offenses or bad acts under article 37.07 or
Rule of Evidence 404(b), that the trial court’s standard discovery order did
not require such notice, and that the State did not provide it. Trial counsel
also acknowledged that, because she was unaware of the evidence supporting an
inference that Brown continued to solicit business or work in the sex industry
after the date of the offense charged, she did not prepare to rebut that
evidence. But trial counsel’s “failure to request notice of
intent to introduce punishment evidence under Art. 37.07, § 3 is not one
of those acts we will consider so egregious that it, by itself, will constitute
ineffective assistance of counsel.” Rodriguez v. State, 981 S.W.2d 357, 359 (Tex. App.—San Antonio
1998, no pet.) (noting that rule finding counsel’s failure to request
notice of extraneous offense evidence ineffective per se “would effectively
block any attempt by the State to introduce evidence of this type, because in
the case of an unfavorable result a defendant would be able to claim
ineffective assistance as a matter of right”); see Huddleston v. State, No. 01-00-01174-CR, 2001 WL 1243962, at *3
(Tex. App.—Houston [1st Dist.] Oct. 18, 2001, pet. ref’d) (mem. op., not designated
for publication) (“[T]rial counsel’s failure to
request notice of intent to introduce extraneous offenses at punishment does
not per se constitute ineffective
assistance of counsel.”); see also Autry
v. State, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref’d) (explaining that trial counsel’s failure to file
pre-trial motions, in itself, does not result in ineffective assistance); Huynh v. State, 833 S.W.2d 636, 638
(Tex. App.—Houston [14th Dist.] 1992, no writ) (same). This Court and others
have denied a defendant’s ineffective-assistance claim when the defendant
failed to develop a record explaining the steps she would have taken had trial
counsel received notice of the extraneous offense evidence or establishing that
the extraneous offense evidence was inadmissible in the first instance. See Rodriguez, 981 S.W.2d at 359; Petkovic v. State,
No. 14-06-00551-CR, 2007 WL 2001697, at *2 (Tex. App.—Houston [14th Dist.] July 12, 2007, pet. ref’d)
(mem. op., not designated for publication); Huddleston, 2001 WL 1243962, at *3. 

The record in this case is
similarly undeveloped. Brown has not made any argument or showing that the
State’s evidence was irrelevant or inadmissible, just that trial counsel failed
to request notice of the State’s intent to introduce that evidence at
punishment. Neither has Brown identified what her trial counsel could have
discovered with timely notice of the State’s intent—i.e, Brown has not
identified any particular witness or other evidence her trial counsel could have
presented to rebut the inference that she continued to work in the sex industry.
We note that, during her closing remarks, trial counsel criticized the
credibility of the State’s punishment evidence, pointing out that Surginer’s testimony was that Brown did not engage in or
agree to engage in any further sexual contact with members of the Vice Division
and that the State had not presented copies of the web-advertisements allegedly
posted by Brown after the date of the charged offense. The jury assessed
punishment at 90 days’ confinement and a $1,000 fine—a sentence in the middle of the range available
for prostitution as a class B misdemeanor. See
Tex. Penal Code Ann. § 12.22
(West 2011) (providing that a person guilty of class B misdemeanor shall be
punished by a fine not to exceed $2,000 or confinement for a term not to exceed
180 days or both). 

On this record, we cannot conclude
that there is a reasonable probability, i.e., one sufficient to undermine
confidence in the outcome, that the result of the punishment hearing would have
been different had her trial counsel properly requested notice of the State’s
intent to introduce evidence of extraneous offenses or bad acts. See Strickland, 466 U.S. at 687, 694,
104 S. Ct. at 2064, 2068. 

We therefore hold that Brown has
not satisfied the Strickland standard
for ineffective assistance of counsel with respect to any of the three reasons
she asserts counsel’s performance was deficient and that the trial court did
not err in denying her motion for new trial. We overrule her second issue.  

Conclusion

          We conclude that the
evidence is sufficient to support the jury’s verdict finding Brown guilty of
the misdemeanor offense of prostitution. We further conclude that Brown has not
established that she received ineffective assistance of counsel during the
punishment phase of her trial. Accordingly, we affirm the trial court’s
judgment.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.

Do
not publish. Tex. R.
App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §
43.02(a)(1) (West 2011). 

 





[2]
          “Sexual intercourse” means “any penetration
of the female sex organ by the male sex organ,” and “deviate sexual
intercourse” means “any contact between the genitals of one person and the
mouth or anus of another.” Tex. Penal Code Ann. § 43.01(1), (5)
(West 2011). 

 





[3]
          Brown alleged that Surginer had allowed her to place her mouth on his penis in
the motel room in order to make a case against her. 

 





[4]
          We note that, despite Brown’s
refusal to testify on her own behalf during the punishment hearing, trial
counsel relayed Brown’s history of abuse to the State. According to the
prosecutor’s affidavit submitted during the new trial hearing, 

 

“In a conversation with defense counsel during a break of the punishment
phase of the trial, defense counsel stated to me that [Brown] had been the victim of a
sexual offense at a young age and had been removed from her home by her mother.
Defense counsel stated to me that she was hoping that [Brown] would be willing
to testify but that it seemed unlikely because [Brown] was reluctant to testify
as to her personal history. During this conversation, I again asked defense
counsel whether [Brown] would be interested in an agreed punishment of
probation. However, this offer was again rejected by defense counsel who stated
that [Brown] was adamant that she did not want to be on probation.” 

 

Thus, after the
jury determined Brown’s guilt, trial counsel made some effort to obtain a
lesser sentence. Brown, however, rejected the State’s offer, and, according to
the same affidavit, she had
twice before rejected an offer of six months’ deferred adjudication in exchange
for guilty plea.