**Opinion issued March 16, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00706-CR**

———————————

**JOSE FRANSISCO MENDOZA-NAVARRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1542074**

---

**MEMORANDUM OPINION**

Jose Fransisco Mendoza-Navarro[1] was convicted of continuous sexual abuse

of a child and sentenced to 25 years' imprisonment. TEX. PENAL CODE § 21.02(b).

---

[1] We have used the spelling of the appellant's name found on the trial court judgment.

On appeal, he contends that the evidence is insufficient to support his conviction and that he received ineffective assistance of counsel at trial. We affirm.

## Background

Mendoza-Navarro was indicted for continuous sexual abuse of a child after his teenage daughter, M.M., told her school counselor that he had sexually abused her beginning when she was eight years old until she was twelve years old. He pleaded not guilty and proceeded to trial.

At trial, the school counselor, Sasha Ayad, testified that she had worked at M.M.'s school in southwest Houston as the middle school counselor from 2014 until 2016. She first met with M.M. after M.M.'s mother, Grecia Berrios, reported that she was concerned about M.M.'s mood. M.M. and Ayad met for a few sessions to discuss emotional struggles. At the time, Ayad believed M.M.'s sadness stemmed from parental discord. She also knew that M.M. had cut herself due to her sadness.

In August 2016, M.M. and another student approached Ayad. The other student encouraged M.M. to talk to Ayad, and M.M. disclosed that she had been sexually abused. Ayad asked to speak with M.M. privately, and the other student left. Over the course of two sessions, M.M. told Ayad that her father touched her breasts and genital area during visits to his house. She described that she would try to push her father away, but this only upset him. M.M. was too scared to fight

2

back. M.M. told Ayad that the inappropriate touching began when she was eight years old and continued until she was twelve years old during regularly scheduled weekend visits with her father. At the time of the disclosure, M.M. was no longer seeing her father regularly.

In response to the outcry, Ayad reported the sexual abuse to Child Protective Services and met with M.M.'s mother. M.M.'s mother became very upset and tearful and was shocked by the news.

M.M.'s mother, Grecia Berrios, testified that Mendoza-Navarro was her first boyfriend. They met while living in El Salvador when she was thirteen years old and he was twenty-one years old. She became pregnant with M.M. at fourteen. After M.M. was born, the couple moved to Houston. Berrios testified that the appellant was verbally abusive while they lived in El Salvador and became physically abusive once they moved to the United States. She described an incident in which Mendoza-Navarro found out that another man had approached her. He called her into the closet, telling her that something was wrong with one of his jackets, but when she got there, he bit her all over her body to the point that she lost consciousness. On another occasion, he pushed her into a bathtub. After one incident, criminal charges were filed against Mendoza-Navarro, but the case was dropped because Berrios refused to testify against him.

In 2012, M.M.'s parents separated. Berrios moved into an apartment with eight-year-old M.M. Berrios believed it was important for M.M. to maintain a relationship with her father, and she made a verbal agreement with him that he would have overnight visitation with M.M. every other weekend. They also had a verbal agreement for child support. M.M. stayed with her father every other weekend from Saturday until Monday.

After a while, M.M. complained to Berrios that she did not want to go on the visits. Berrios called Mendoza-Navarro to ask why M.M. was so upset and did not want to visit him. He responded that M.M. was upset because he had disciplined her for not following instructions or respecting him. M.M. continued to see her father for months even though she continually asked her mother to stop the visits. M.M. stopped seeing her father after Berrios noticed that her daughter was extremely upset. M.M. would not leave her room, began losing weight, and lost focus at school. Berrios discovered M.M. cutting herself in her room. She stopped requiring M.M. to spend weekends with her father, and in turn, Mendoza-Navarro stopped paying child support.

After she found M.M. cutting herself, Berrios contacted the school counselor and explained her concerns about M.M. M.M. saw the school counselor for about a year before Mendoza was called into her office and learned that M.M. said her father had sexually abused her. At the time, Mendoza-Navarro had not visited with

4

his daughter in about a year. After she heard from the school counselor, Mendoza called the police and made a report. She took M.M. for a forensic interview and a medical exam.

Brittany Dancer, forensic interviewer at the Children's Assessment Center testified regarding the interview she conducted with M.M. During the interview, M.M. told her that her father had touched her on her "vagina, her butt, and her breasts." M.M. told Dancer that the incidents occurred from when she was eight years old until she was twelve. At the time of the interview, M.M. was thirteen. During the interview, M.M. started out happy, smiling, and talkative. When she mentioned the abuse, her demeanor changed significantly. She spoke softly and her tone and body language changed. At the conclusion of Dancer's testimony, a video of the forensic interview was offered into evidence and published to the jury.

M.M. testified that beginning when she was eight years old, she stayed overnight with her father every other weekend. Every time she visited, Mendoza-Navarro touched her "breast, butt, [and] vagina." She testified that the incidents happened in the living room and bedroom and once in a car. M.M. described that Mendoza-Navarro would wake up earlier than she did, come into the bedroom, and touch her while she was in bed. While he touched her, he would lay down in bed behind her with the front of his body touching the back of her body. M.M. testified

that on one occasion, they were watching a movie in the living room, and Mendoza-Navarro put his hands under her shirt and touched her breasts.

She stopped seeing Mendoza-Navarro when she was about twelve. She told her mother that she did not want to see him, but she did not tell her mother at that time that he had been touching her inappropriately. She testified that she felt the touching was normal because Mendoza-Navarro had consistently touched her for so long. She thought that it was part of what a father does. M.M. testified that Mendoza-Navarro touched her "butt, breast, and vagina" every time she visited, on both days of her visit, from when she was eight years old until she twelve years old.

M.M. testified that after she had stopped seeing her father for a while, she spent one more weekend with him. First, they went to a restaurant with her mother. Then, he drove M.M. to his apartment. On the way, they stopped at a stoplight, and he tried to kiss her and touch her. She fought back and pushed him away. When the traffic light turned green, he drove on and did not try to touch her again. After the encounter, M.M. told the school counselor about the abuse, in part, because despite not seeing him, her father had not changed. She testified that she cut herself because she did not want to continue living. She also stated that she tried to kill herself because what was happening with her father was too much for her to handle.

6

Detective A. Lopez-Keys testified that she was assigned to the case in January 2017. She reviewed the forensic interview of M.M., M.M.'s medical records from the Children's Assessment Center, and M.M.'s therapy records. She also spoke with M.M.'s mother. Detective Lopez-Keys contacted Mendoza-Navarro and asked if he would voluntarily give a statement. Though he replied that he would, he did not show up for the interview. After her investigation, Detective Lopez-Keys presented the case to the district attorney's office and charges were filed.

Mendoza-Navarro testified that he had always had a good relationship with M.M. He testified that there were times that he argued with M.M.'s mother both in El Salvador and in the United States. Because she was always with them, M.M. saw them fighting and arguing. Mendoza-Navarro testified that on one occasion, M.M.'s mother called the police, and they arrested him. He believed that Berrios called the police because she did not want to have sexual relations with him. He believed that M.M.'s mother was not faithful to him, and they separated when he confronted her about infidelity.

Mendoza-Navarro described a typical weekend with M.M. He picked M.M. up on Saturday, and they would go out to eat. When they got to his apartment, they normally watched a movie, and he fell asleep. During the movie, M.M. typically played with a cell phone given to her by her mother. Mendoza-Navarro did not

7

agree that his daughter should have a cell phone, and he told her not to use it during movies. Mendoza-Navarro explained that he would discipline M.M. because she would not do chores, like washing dishes. In 2014, M.M.'s mother called him and told him that M.M. had cut herself on her arm. M.M., her mother, and Mendoza-Navarro met at a Starbucks to talk. At the meeting, he heard that M.M. did not want to stay with him on the weekends because she did not want to go to church. They often attended church as discipline. Mendoza-Navarro told M.M. that he loved her and that she should come with him on weekends.

Mendoza-Navarro testified that everything M.M. said about him was false. Specifically, she said that he had touched her while she was on a sofa, but they never sat there. He also testified that though M.M. told the forensic interviewer that she had a bra on sometimes when he touched her, when she was eight years old, M.M. never wore a bra. He also denied M.M.'s testimony that he hit her for discipline. He testified that he only spanked her on one occasion, on the "rear end."

He testified that M.M. was being manipulated by her mother. He believed M.M. lied to the school counselor, continued the lie at the Children's Assessment Center, and did not want to correct the lie because if she did, her mother would stop believing anything she said. According to Mendoza-Navarro, M.M. lied because he disciplined her, made her stop using her cell phone during a movie,

8

made her make the bed, and made her go to church. Mendoza-Navarro also believed that M.M. lied about cutting herself to manipulate her mother against him.

After Mendoza-Navarro's testimony, the defense rested. The jury found Mendoza-Navarro guilty of continuous sexual abuse of a child and recommended punishment at 25 years' imprisonment. TEX. PENAL CODE § 21.02(b). The court sentenced him in accordance with the jury's verdict.

## Sufficiency of the Evidence

In his first issue, Mendoza-Navarro contends that the evidence is insufficient to support his conviction. Specifically, he argues that the evidence does not show that he committed two or more acts of sexual abuse or that he perpetrated those acts against M.M. during a period of time thirty or more days in duration. We disagree.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not reevaluate the weight and credibility of the

9

evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To establish that Mendoza-Navarro committed the offense of continuous sexual abuse of a child, the State was required to prove that, during a period thirty or more days in duration, he committed at least two acts of sexual abuse against M.M., a child younger than fourteen years of age, while he was at least seventeen years of age at the time of each of the acts. *See* TEX. PENAL CODE § 21.02(b).

10

Several crimes can constitute "acts of sexual abuse" under section 21.02(c). *See id.* § 21.02(c). The indictment in this case alleged that Mendoza-Navarro committed at least two acts of indecency with a child. *See id.* § 21.02(c)(2) (listing indecency with a child as a sexual act for purposes of continuous sexual abuse of a child). A person commits the offense of indecency with a child by sexual contact if the person "engages in sexual contact with the child or causes the child to engage in sexual contact." *Id.* § 21.11(a)(1). "Sexual contact" for purposes of indecency with a child is defined as "any touching, including touching through clothing, of the anus, breast, or any part of the genitals of a child" done with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1). But for purposes of the crime of continuous sexual abuse of a child, indecency with a child by sexual contact is an "act of sexual abuse" only if the actor committed the offense in a manner other than by touching the child's breast, including through clothing. *See id.* § 21.02(c)(2).

## B.    Analysis

The record contains sufficient evidence for any rational factfinder to conclude that Mendoza-Navarro committed at least two acts of sexual abuse against M.M. during a period of time longer than thirty days. The jury charge defined "sexual contact" as "any touching by a person, including touching through clothing, of any part of the genitals of a child with the intent to arouse or gratify

11

the sexual desire of any person." The application section of the charge authorized the jury to convict Mendoza-Navarro of continuous sexual abuse of a young child if they believed beyond a reasonable doubt that he committed at least two acts of sexual abuse, namely indecency with a child by sexual contact with M.M.'s genitals, during a period of thirty days or more in duration between July 15, 2012 through May 1, 2016.

M.M. testified that, beginning when she was eight years old, Mendoza-Navarro touched her "private parts," including her "vagina." She testified that he touched her "private parts" every time she visited him, and that she visited every other weekend until she was twelve years old. She stated that he touched her in the living room and bedroom of his apartment and once in his car. M.M. said that the abuse continued regularly for four years.

It is well established that a child complainant's uncorroborated testimony, standing alone, is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. art. 38.07; *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding complainant's testimony of penetration by appellant, standing alone, was sufficient to support conviction); *Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating testimony of child complainant, standing alone was sufficient evidence). The State has no burden to produce physical or

other corroborating evidence. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Here, the State offered testimony supporting M.M.'s testimony. M.M.'s school counselor described that when M.M. disclosed to her that Mendoza-Navarro had "touched her" inappropriately, M.M. "pointed . . . towards her breast area and her genital area." M.M. also told the counselor that the abuse occurred repeatedly since she was eight years old. This outcry statement is also sufficient, without more, to establish that Mendoza-Navarro perpetrated two or more acts of indecency with a child by sexual contact with M.M.'s genitals. *See Jones*, 428 S.W.3d at 169 ("[A] child victim's outcry statement alone can be sufficient to support a sexual abuse conviction). Brittany Dancer, who conducted a forensic interview of M.M. also corroborated M.M.'s testimony when she testified that M.M. disclosed during the interview that Mendoza-Navarro had touched her "vagina, her butt, and her breasts" beginning when M.M. was eight years old and ending when she was twelve.

Mendoza-Navarro contends that the evidence is insufficient because touching a child's breast cannot constitute indecency by contact for purposes of the continuous sexual abuse of a child statute. While M.M. testified that Mendoza-Navarro touched her breast, she also testified that he touched her vagina on numerous occasions. This testimony was corroborated by both her school

counselor and forensic interviewer. The jury charge also did not define sexual contact to include touching M.M.'s breast, instead instructing the jury that sexual contact was contact with M.M.'s genitals. There was ample evidence for rational trier of fact to conclude that Mendoza-Navarro touched M.M.'s genitals on multiple occasions.

The evidence also supports that the incidents of sexual abuse occurred over a period of more than thirty days. M.M. testified that the abuse occurred every time she visited her father and that the abuse occurred on both days of her visit. She testified that she stayed with him for two nights, every other weekend, for a four-year period of time. In light of the evidence, any rational factfinder could conclude beyond a reasonable doubt that Mendoza-Navarro committed two or more acts of indecency with a child by sexual contact with M.M.'s genitals and that he did so over more than thirty days. TEX. PENAL CODE § 21.02(b); *see also id.* § 21.11(a)(1).

## Ineffective Assistance of Counsel

In his second issue, Mendoza-Navarro contends that he received ineffective assistance of counsel. He alleges that his trial attorney was ineffective because she declined to object to and sponsored evidence that he was verbally and physically abusive to M.M.'s mother.

14

## A.    Standard of Review

To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient and (2) a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The defendant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Under the first *Strickland* prong, any judicial review of whether counsel's performance was deficient must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Id.* We begin by presuming that trial counsel performed within professional norms. *Id.* We do not assume that counsel lacked a sound reason for making the choices she did; on the contrary, the defendant must demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d

390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone*, 77 S.W.3d at 833. In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, and the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that she was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Under the second *Strickland* prong, a defendant must show more than "that the errors had some conceivable effect on the outcome of the proceeding." *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693). The defendant must show that there is a reasonable probability that, absent the errors, the jury would have had a reasonable doubt about his guilt. *Id.* (quoting

16

*Strickland*, 466 U.S. at 695). A reasonable probability is probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 697.

## B. Analysis

Mendoza-Navarro's sole defense at trial was that he never sexually abused M.M. and that M.M. was lying about the abuse. To explain why M.M. must be lying, trial counsel took a candid approach with the jury, acknowledging in her opening statement that Mendoza-Navarro had a turbulent relationship with M.M.'s mother but that this was a case of "messy separation, not sexual abuse." On appeal, Mendoza-Navarro alleges that his counsel should have objected when M.M.'s mother testified about specific acts of verbal and physical abuse she had experienced from Mendoza-Navarro. He also contends that counsel should not have reiterated the testimony by asking M.M.'s mother on cross-examination about the specific timing of physical abuse during their relationship.

Counsel sought to establish a transparent rapport to have credibility with the jury. In closing argument, she told the jury that she had freely disclosed the significant age difference between her client and M.M.'s mother. She also reiterated that she had been the first to tell the jury of the volatile nature of her client's relationship with M.M.'s mother. But she also reiterated that even if

17

Mendoza-Navarro had a turbulent relationship with M.M.'s mother, he was not a sexually abusive father. While this strategy had risks, we cannot say that the strategy fell below an objective standard of reasonableness under the circumstances. *Strickland*, 466 U.S. at 687. Counsel's strategy provided context to M.M.'s relationship with each of her parents and demonstrated the relationship dynamic that M.M. observed between them. *See Martin v. State*, 265 S.W.3d 435, 443–45 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("Because it also appears that [defendant's] candor before the jury concerning his prior convictions was a strategic attempt to appear open and honest, and to lessen the impact of any impeachment on the issue, we cannot conclude that his counsel provided ineffective assistance with regard to the introduction of these convictions."). Counsel's strategy allowed Mendoza-Navarro to thoroughly tell his side of the story, giving him the ability to explain why he believed that M.M was lying. The strategy gave him the opportunity to admit that though he had issues with her mother, he was not sexually abusive to M.M. Counsel's candor and failure to object when the State introduced related testimony could have been part of a strategy to establish rapport with the jury, avoid drawing unwanted attention to the domestic violence, and prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence. *See Huerta v. State*, 359 S.W.3d 887, 894 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (counsel's decision to

permit details of prior convictions could be strategy to avoid drawing attention to them and avoid conclusion that she was attempting to withhold evidence); *Varughese v. State*, 892 S.W.2d 186, 196 (Tex. App.—Fort Worth 1994, no pet.) (failure to object was part of a strategy to appear open and honest).

Because counsel's performance is consistent with sound trial strategy, we cannot conclude that counsel performed deficiently. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On this record, Mendoza-Navarro failed to meet his burden to establish that his counsel's strategy was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *see also Bone*, 77 S.W.3d at 836. We overrule Mendoza-Navarro's second issue.

## Conclusion

We affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Goodman, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).